**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: POWERSCHOOL GROUP, LLC AND POWERSCHOOL HOLDINGS INC. | ) <br> )   MDL DOCKET NO. _____ <br> ) <br> ) |

**BRIEF IN SUPPORT OF MOTION TO
TRANSFER AND CONSOLIDATE FOR
<u>COORDINATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407</u>**

Plaintiff J.I., A.J., AND O.S. by and through her Next Friend M.S., on behalf of themselves and other similarly situated Missouri residents, (collectively, "Movants") hereby submit this brief in support of the Motion to Transfer and Consolidate for Coordinated Pretrial Proceedings under 28 U.S.C. § 1407. At the time of this filing, thirty-two putative class actions have been filed in three judicial districts. All claims arise out of a cyber-disclosure that impacted certain PowerSchool Group, LLC's and PowerSchool Holdings, Inc.'s (collectively "PowerSchool") business systems and seek to represent overlapping putative classes. Transfer and consolidation of the duplicative cases is appropriate under Section 1407 for the reasons set forth herein.

As discussed in detail below, Movants respectfully request that the Judicial Panel on Multidistrict Litigation transfer the pending cases to the Western District of Missouri. This District is the most appropriate transferee forum due to its central location in a case involving potentially tens of millions of victims nationwide and its extensive experience managing multidistrict litigation, making it well-suited to handle complex pretrial proceedings.

**FACTUAL AND PROCEDURAL
BACKGROUND**

PowerSchool, a leading provider of cloud-based software for K-12 education in North America, serves over 60 million students and 18,000 educational institutions across 90 countries,

including more than 90 of the top 100 U.S. school districts. On January 7, 2025, PowerSchool disclosed a cybersecurity incident (the "Data Breach") that exposed the personal data of students, teachers, and their families. The Data Breach, discovered on December 28, 2024, involved unauthorized access and exfiltration of highly sensitive information from specific PowerSchool data storage environments via its PowerSource customer support portal. Hackers responsible for the breach claimed in an extortion demand to have stolen the personal information of 62.4 million students and 9.5 million teachers from school districts nationwide.

The thirty-two putative class actions are pending in three federal district courts. Two actions are pending in the Western District of Missouri, one is pending in the Eastern District of New York, and the remaining are pending in the Eastern District of California. All of the actions are in the preliminary stages of litigation. The first action was filed on January 8, 2025. The filed cases are not only based on the same factual occurrence – the Data Breach – they also assert similar claims on behalf of overlapping putative classes of plaintiffs. The documents and witnesses relevant to claims arising out of the Data Breach will primarily be the same.

While the majority of cases were filed in the Eastern District of California, where the defendant is headquartered, that district is among the most understaffed and overburdened in the country. It is in the interest of all parties involved that the cases be consolidated before a court that has the capacity, experience, and resources to handle this complex litigation efficiently and in a manner that will "secure the just, speedy, and inexpensive determination" of these related actions. Fed. R. Civ. P. 1.

**ARGUMENT**

**I.      Consolidation and Coordination of Pretrial Proceedings Is Proper.**

Pursuant to 28 U.S.C. § 1407, the transfer of actions to a single jurisdiction for coordinated or consolidated pretrial proceedings is proper when the civil actions pending in various districts involve one or more common questions of fact, and transfer and consolidation "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  These statutory requirements are met in this case.

A.   All of the Cases Involve Common Questions of Fact.

Transfer under Section 1407 "does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Rembrandt Techs., LP, Patent Litig.*, 493 F. Supp. 2d 1367, 1370 (J.P.M.L. 2007). Here, this requirement is easily satisfied because all of these cases arise out of and seek to hold one or more Defendants responsible for the same Data Breach. The central allegation in every case is that the Defendants failed to safeguard the private information of teachers, students, and families, leading to unauthorized access of that information.

This Panel frequently finds consolidation warranted where, as here, multiple pending cases arise out of a single data security incident.  *See, e.g.*, *In re Sprouts Farmers Mkt., Inc.*, 232 F. Supp. 3d 1348, 1348 (J.P.M.L. 2016) (transferring four actions for consolidated pretrial proceedings where cases "share factual issues concerning an incident in which the 2015 W-2 forms of Sprouts employees were released, unencrypted, to an unknown party as the result of a phishing scam"); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 870 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (finding transfer appropriate where the "actions all arise out of the September 2011 theft of computer tapes containing personally identifiable and protected health

information"); *In re RBS Worldpay, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 2d 1322, 1322 (J.P.M.L.2009) (granting motion to consolidate two actions pending in two judicial districts where "[b]oth actions involve allegations stemming from an unauthorized intrusion into RBSW's computer system"). The benefits of consolidation are clear when discovery in each of the cases will center on the same facts – the cause and circumstances of the Data Breach and the Defendant's data security practices.

B.  <u>Consolidation of the Cases Promotes Their Just and Efficient Resolution</u>.

Consolidation of these cases "will promote [their] just and efficient conduct." 28 U.S.C. §1407. There are currently eight putative class actions pending in six different judicial districts. The Panel has consistently transferred similar numbers of actions arising out of a single data incident. *See, e.g.,In re Cmty. Health Sys., Inc. Customer Data Security Breach Litig.*, 84 F. Supp. 3d 1362, 1362 (J.P.M.L. 2016) (granting petition for consolidation with five actions pending in a total of five judicial districts); *In re Sonic Corp. Customer Data Security Breach Litig.*, 276 F. Supp. 3d 1382,1382 (J.P.M.L. 2017) (five actions pending in a total of three judicial districts); *Sprouts Farmers Mkt.*, 232 F. Supp. 3d at 1348 (four actions pending in a total of three judicial districts); *In re VA Data Theft Litig.*, 461 F. Supp. 2d 1367, 1368 (J.P.M.L. 2006) (three actions pending in a total ofthree judicial districts); *In re Lending Tree, LLC Consumer Data Sec. Breach*, 581 F. Supp. 2d 1367, 1367 (J.P.M.L. 2008) (three actions pending in a total of three judicial districts); *RBS WorldPay*, 626 F. Supp. 2d at 1322 (two actions pending in a total of two judicial districts); *In re Supervalu, Inc. Customer Data Sec. Breach*, 67 F. Supp. 3d 1377, 1377 (J.P.M.L. 2014) (two casespending in a total of two judicial districts).

Moreover, as referenced above, the filed actions assert similar theories of liability. They each assert claims for negligence and breach of implied contract. They all also assert claims for

alleged violation of state consumer protection statutes. All of the pending cases are class actions.

The Panel has long recognized that overlapping and parallel class actions asserting similar claims

for recovery are particularly well-suited for consolidation under Section 1407. *See, e.g.*, *In re*

*Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1376 (J.P.M.L. 2007)

("Centralization underSection 1407 will eliminate duplicative discovery; prevent inconsistent

pretrial rulings (particularly with respect to the issue of class certification); and conserve the

resources of the parties, their counsel and the judiciary."); *In re Chrysler Corp. Vehicle Prods.*

*Liab. Litig.*, MDL No. 1239, 1998 LEXIS 15675, at *2 (J.P.M.L. Oct. 2, 1998) (ordering transfer

where "the actions in this litigation involve common questions of fact concerning allegations by

overlapping classes of defects in the paint of certain Chrysler vehicles that result in chipping,

peeling, and discoloration of the paint finish"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp.

1271, 1273 (J.P.M.L. 1975)("[T]ransfer of actions under § 1407 is appropriate, if not necessary,

where the possibility of inconsistent class determinations exists."); *In re Hawaiian Hotel Room*

*Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is

especially important to ensureconsistent treatment of the class action issues.").

Consolidation is particularly appropriate here because each of the cases is in its infancy.

As such, none of the cases to be transferred has progressed significantly, as Plaintiffs have not

yet propounded discovery, and motion practice is not underway. This ensures that the transferee

court's efforts will not duplicate the work of any transferor court or result in inconsistent rulings

on substantive matters.

C. Consolidation Creates Convenience for the Parties and Witnesses.

Consolidation is also warranted because it will create convenience for the parties and

witnesses and will conserve judicial resources. Consolidation is appropriate where it "will

eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014); *see also* Manual for Complex Litigation, Fourth § 20.131 (2004) (Requests for Transfer) ("The objective of transfer [through the MDL process] is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."). If the litigation is not consolidated, Defendants will be subject to duplicative discovery demands and be forced to litigate the same issues before several courts, driving up litigation costs, putting them at risk of inconsistent rulings, and wasting judicial resources in the process.

II.     **The Western District of Missouri Is the Most Appropriate Venue for the Transfer of These Actions.**

In deciding the appropriate transferee court, the Panel has often considered: (i) where the majority of cases are pending; (ii) where a defendant's headquarters are located; (iii) where relevant documents and witnesses are located; (iv) whether the transferee district is easily accessible to parties and witnesses; and (v) whether the transferee court has the capacity to devote sufficient resources to complex consolidated proceedings. As discussed below, these factors strongly support consolidating pretrial proceedings in the Western District of Missouri.

While most cases have been filed in the Eastern District of California, where the defendant is headquartered, two cases were filed in the Western District of Missouri, which is a far more suitable venue. The Eastern District of California is one of the most understaffed federal districts in the country, with six judges handling an average of 1,299 pending cases each. This severe backlog creates a high risk of delays and inefficiencies, especially in complex litigation.

In contrast, the Western District of Missouri is much better equipped to manage this MDL. With the same number of judges handling an average of only 413 pending cases, it has

significantly more capacity and resources to efficiently oversee this matter.

Furthermore, the Western District of Missouri is geographically central, making it a more convenient and accessible forum for parties and witnesses from across the country. This is especially significant in a case involving potentially tens of millions of plaintiffs nationwide, as the burden of travel and costs would be equitably distributed. Moreover, as demonstrated during the COVID-19 pandemic, the physical location of witnesses is not necessarily a determinative factor as depositions and other case events can be handled remotely. Nonetheless, where in-person appearances would be necessary for the various parties and witnesses, Missouri is the most centrally located jurisdiction to both coasts and all parties.

Finally, the Western District of Missouri has significant experience handling complex litigation, making it particularly well-suited to manage this MDL. The district currently oversees four MDLs, with at least two nearing their final stages, demonstrating its capacity to efficiently manage and resolve large-scale cases.[1] Notably, Judge Wimes presided over MDL No. 3073: *IN RE: T-Mobile 2022 Customer Data Security Breach Litigation*, one of the largest data breach cases on record, involving a comparable number of affected individuals. The case was resolved in less than one year and, following a recent appeal, is nearing its conclusion. In sum, the Western District of Missouri's central location, judicial capacity, and experience with similar MDL cases make it the most suitable forum for consolidating and managing these cases.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Panel order these related actions, and any others that may be subsequently filed, consolidated and transferred under Section 1407 to the Western District of Missouri.

---

[1] Likely due to its significant backlog, there are no pending MDLs in the Eastern District of California.

Respectfully submitted,

*Maureen M. Brady*

_____

Maureen M. Brady      MO #57800
Lucy McShane          MO #57957
MCSHANE & BRADY, LLC
4006 Central Street
Kansas City, MO 64111
Telephone: (816) 888-8010
Facsimile: (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
          lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF J.I.,
A.J., and O.S. by and through her Next
Friend M.S.**