BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC., AND POWERSCHOOL GROUP, LLC CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3149 |

**PLAINTIFF BRITTAINY STRINGER'S INTERESTED PARTY RESPONSE IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE FOR COORDINATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiff Brittainy Stringer ("Plaintiff"), plaintiff in *Stringer, et al. v. PowerSchool Group, LLC*, No. 2:25-cv-00426 (E.D. Cal.), respectfully submits this interested party response in support of the Motion to Transfer and Consolidate for Coordinated Pretrial Proceedings under 28 U.S.C. § 1407 filed by Plaintiffs J.I., A.J., and O.S., by and through her Next Friend M.S. For the reasons discussed below, Plaintiff agrees that transfer of the actions listed in the Schedule of Actions (ECF No. 2-3) and any subsequently filed tag-along actions (collectively, the "Related Actions") to the Western District of Missouri for coordinated or consolidated pretrial proceedings is appropriate under 28 U.S.C. § 1407 and that the Western District of Missouri is the most appropriate transferee district.

## BACKGROUND

PowerSchool is a cloud-based software solutions provider for K-12 schools and districts that supports over 60 million students and over 18,000 customers worldwide. In December 2024, a threat actor was able to gain unauthorized access to the personally identifying information ("PII") of students and teachers contained in certain PowerSchool Student Information System ("SIS") environments (the "Data Breach"). Following the Data Breach, the threat actor claimed to have

1

exfiltrated the data of approximately 6,500 school districts, impacting approximately 62.5 million students and 9.5 million teachers

In the wake of this massive Data Breach, impacted individuals have filed forty-three (43) overlapping putative class actions across five (5) federal district courts against PowerSchool.[1] Plaintiffs in each of the Related Actions assert that PowerSchool has a duty to secure, maintain, protect, and safeguard the PII with which it wase entrusted; that the risk of a cyberattack was highly foreseeable; that PowerSchool nonetheless failed to properly protect plaintiffs' and putative class members' PII, which resulted in the Data Breach; and that plaintiffs and putative class members experienced harm as a result of the Data Breach. As such, each Related Action arises from the same nucleus of operative facts and alleges a common set of facts regarding PowerSchool's failure to properly protect and secure the PII with which it was entrusted.

## ARGUMENT

**I.  TRANSFER IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407(A).**

Centralization and transfer are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Man. for Complex Litig., § 20.131 (4th ed. 2004).

---

[1] These Districts include: the Eastern District of California, the Northern District of California, the Northern District of Illinois, the Western District of Missouri, and the Eastern District of New York.

Here, the Related Actions all arise out of the same factual core—the Data Breach and subsequent harm that occurred—impacting millions of individuals. The Panel has consistently centralized actions arising out of a single data breach, recognizing that they "involve common questions of fact" and that centralization "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Change Healthcare, Inc., Customer Data Sec. Breach Litig.*, 737 F. Supp. 3d 1367, 1368 (J.P.M.L. 2024); *see also In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368 (J.P.M.L. 2023); *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363 (J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 (J.P.M.L. 2019).

As with those prior data breaches, the Data Breach here has spawned similar litigation bound to a single event—the compromise of PowerSchool's systems. Each of the Related Actions therefore raises common questions including, *inter alia*: (1) whether PowerSchool owed a duty to plaintiffs and putative class members to protect their PII; (2) whether PowerSchool had a duty to implement adequate security measures to protect their computer systems from unauthorized access and related disruptions; (3) whether PowerSchool was negligent in collecting and storing plaintiffs' and putative class members' PII; (4) whether plaintiffs and putative class members are entitled to damages and/or restitution as a result of PowerSchool's wrongful conduct; and (5) whether plaintiffs and putative class members are entitled to declaratory judgment. All Related Actions further hinge upon similar legal theories of recovery, with PowerSchool's alleged duty to implement adequate data security measures to prevent or mitigate the Data Breach—and its alleged failure to fulfill those duties—at the center of the litigation.

Given the similar claims raised in each Related Action, adjudicating these and other common issues in a single transferee court will benefit the parties and witnesses while promoting judicial efficiency, as a single court can easily coordinate the pretrial proceedings governing the claims along with these common issues. *See, e.g.*, *In re Change Healthcare*, 737 F. Supp. 3d at 1368.

## II. THE WESTERN DISTRICT OF MISSOURI IS THE MOST APPROPRIATE TRANSFEREE FORUM.

To select a transferee district, the Panel relies on no single factor but considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Man. for Complex Litig., § 20.131 (4th ed. 2004). While only two of the Related Actions are pending in the Western District of Missouri, these pragmatic factors support centralization in the Western District of Missouri—an accessible forum with the capacity, judicial resources, experience, and expertise needed to manage this nationwide litigation. *See In re: Premera Blue Cross Customer Data Sec. Breach Litig.*, 110 F. Supp. 3d 1358, 1360 (J.P.M.L. 2015) (selecting transferee court where two related actions were pending, and the transferee court had the "necessary judicial resources and expertise" to manage the litigation efficiently).

### A. The Western District of Missouri Has the Capacity and Judicial Resources Needed to Manage This Complex Litigation Efficiently.

The Panel has previously chosen transferee districts that have favorable docket conditions to efficiently manage an MDL *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011) (transferring to a district with "favorable docket conditions"). Here, as opposed to the Eastern District of California, the Western District of

4

Missouri has the capacity and judicial resources necessary to efficiently manage this litigation. The Western District of Missouri has six judgeships, each overseeing 413 pending cases, while the national average is 937 pending cases per judgeship.[2] In contrast, the Eastern District of California is "one of the most overburden judicial districts in the entire country" *United States v. Zinnel*, 2019 WL 4054845, at *4 (E.D. Cal. Apr. 26, 2019), with its six judgeships each overseeing 1,299 pending cases.[3] In addition, the Western District of Missouri has a much more favorable time from filing to trial for civil actions (25.6 months) as opposed to the Eastern District of California (65.5 months).[4]

Adding an MDL to an already overburden judicial district such as the Eastern District of California creates a high risk of delays and inefficiencies and makes the Western District of Missouri a more favorable transferee district than the Eastern District of California. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1376 (J.P.M.L. 2003) (centralizing actions in a transferee district that "enjoy[ed] general docket conditions permitting the Panel to effect a Section 1407 assignment to a court with the present recourse to devote to pretrial matters").

> **B.     The Western District of Missouri Has the Experience and Expertise Needed to Manage This Complex Litigation.**

The Western District of Missouri's significant experience in handling complex multidistrict litigation, especially in the data breach MDL context, makes it well suited to manage this MDL. For example, Judge Wimes presided over *In re T-Mobile Customer Data Security*

---

[2] *U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics*, United States Courts (September 30, 2024), https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf.
[3] *Id.*
[4] *Id.*

5

*Breach Litigation*, MDL No. 3019 (W.D. Mo.), which resolved in less than a year, and following a recent appeal, is approaching its conclusion. Judge Wimes was also assigned a second data breach MDL, *In re T-Mobile 2022 Customer Data Security Breach Litigation*, MDL No. 3073 (W.D. Mo.). The Panel's recent assignments of these two data breach MDLs demonstrate the Western District of Missouri's ability to efficiently and effectively manage complex data breach MDLs. *See In re: Premera*, 110 F. Supp. 3d at 1360).

    **C.    The Western District of Missouri Is Conveniently Located and Readily Accessible.**

Finally, this Panel considers whether a proposed transferee forum "will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the actions." *In re Anthracite Coal Antitrust Litig.*, 436 F. Supp. 402, 403 (J.P.M.L. 1977). This Panel has previously recognized the Western District of Missouri as geographically central and readily accessible for complex multidistrict litigation. *See In re T-Mobile 2022 Customer Data Sec. Breach Litig.*, 677 F. Supp. 3d 1366, 1367 (J.P.M.L. 2023) ("noting the Western District of Missouri "provides a central and easily accessible location for this nationwide litigation"); *In re T-Mobile Customer Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021) ("The Western District of Missouri presents a geographically central and accessible venue for this nationwide litigation."). Thus, access to the Western District of Missouri will not present challenges to the parties and its central location will minimize the inconvenience of this litigation to the parties, counsel, and witnesses.

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Panel enter an order pursuant to 28 U.S.C. § 1407 transferring the Related Actions, as well as any other actions that

may subsequently be filed, to the Western District of Missouri for centralized coordination or consolidation.

Dated: February 20, 2025                    **LYNCH CARPENTER, LLP**

<u>*/s/ Gary F. Lynch*</u>
Gary F. Lynch
gary@lcllp.com
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone:     (412) 322-9243
Facsimile:       (412) 231-0246

*Counsel for Plaintiff Brittainy Stringer
on behalf of G.S., a minor
No. 2:25-cv-00426 (E.D. Cal.)*