**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION**

| | |
|---|---|
| IN RE: POWERSCHOOLGROUP, LLC AND POWERSCHOOL HOLDINGS, INC. | MDL No. 3149 |

**INTERESTED PARTY RESPONSE OF E.D. CAL. PLAINTIFF NICHOLAS HISSERICH TO THE MOTION FOR TRANSFER AND CONSOLIDATION OF <u>RELATED ACTIONS PURSUANT TO 28 U.S.C. §1407</u>**

Pursuant to 28 U.S.C. §1407 and Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML" or "the Panel"), Plaintiffs Nicholas Hisserich and minor A.H., the named Plaintiffs in *Hisserich, et al. v. PowerSchool Group, LLC, et al.*, Case No. 2:25-cv-00444 (E.D. Cal. Feb. 3, 2025) (together, "Hisserich Plaintiffs" or "Interested Parties"), respectfully submit this Interested Party Response to the Motion for Transfer and Coordination or Consolidation pursuant to 28 U.S.C. §1407 ("Motion") filed by Plaintiffs J.I., A.J., and O.S. by and through her Next Friend M.S. (the "Moving Plaintiffs"). *See* Movant Brief (ECF No. 1-1, MDL No. 3149).

For the reasons set forth herein, Hisserich Plaintiffs respectfully submit that the Moving Plaintiffs' Motion be denied. To the extent the Panel believes that centralization is appropriate, Hisserich Plaintiffs respectfully request that this matter be centralized in the Eastern District of California, where PowerSchool Defendants are headquartered and where the majority of cases arising from the PowerSchool data breach are filed.

**I.      INTRODUCTION**

Interested Parties are individuals who have sued Defendants PowerSchool Group LLC and PowerSchool Holdings, Inc. (together, "PowerSchool" or "Defendants") for negligence and other causes of action arising from one of the largest and most consequential cybersecurity incidents affecting students, teachers, and school districts. Currently, there are more than 50 cases pending

in four different districts[1] stemming from the cyberattack that began in December 2024. Interested Parties believe that transfer pursuant to 28 U.S.C. §1404 by Defendants would be more appropriate and accomplish the necessary goals of centralizing all actions. All the Related Cases share common questions of law or fact, and centralization will serve the convenience of the parties and witnesses and promote efficiency and economy. Alternatively, to the extent the Panel believes that centralization pursuant to 28 U.S.C. §1407 is more appropriate, Hisserich Plaintiffs believe that centralization in the Eastern District of California is most appropriate.

## II. BACKGROUND

PowerSchool, based out of Fulsom, California, provides innovative K-12 software and cloud-based software to school districts across the United States. PowerSchool is the largest provider of cloud-based education software for K-12 education in the United States, serving more than 75% of students in North America.[2] Its software is used by over 18,000 customers, supporting more than 60 million students in the United States.[3] On December 28, 2024, PowerSchool became aware that an outside party obtained unauthorized access to the PowerSchool Student Information System ("SIS") through its PowerSource portal[4] containing the personally identifiable information ("PII") of 62,488,628 students and 9,506,624 teachers[5] (the "Data Breach"), and potentially more

---

[1] There are currently 46 pending cases in the Eastern District of California, three pending cases in the Northern District of California, two pending cases in the Western District of Missouri, and one pending case in the Eastern District of New York.

[2] Carly Page, *Edtech giant PowerSchool says hackers accessed personal data of students and teachers*, TECHCRUNCH (Jan. 8, 2025), https://techcrunch.com/2025/01/08/edtech-giant-powerschool-says-hackers-accessed-personal-data-of-students-and-teachers/#:~:text=The%20California%2Dbased%20PowerSchool%2C%20which,according%20to%20the%20company's%20website.

[3] *Id*.

[4] *Incident General FAQs*, POWERSCHOOL (Jan. 17, 2025), https://www.powerschool.com/security/sis-incident/.

[5] Lawrence Abrams, *PowerSchool hacker claims they stole data of 62 million students*, BLEEPINGCOMPUTER (Jan. 22, 2025),

from parents of students. Subsequently, on January 7, 2025, PowerSchool began communicating to school districts and its customers that certain PII was potentially compromised as a result of the Data Breach.[6]

The PowerSchool Data Breach has impacted millions of students, teachers, and various school districts. Moreover, due to the extensive press coverage thus far, undersigned Plaintiffs anticipate additional class actions will soon commence in other federal courts alleging similar claims on behalf of similar classes.

**III.    II. ARGUMENT**

    **A.    Moving Plaintiffs Have Not Shown that Transfer Under Section 1407 Is the Only Option**

Movants have also not met their burden to show that other options, such as transfer under Section 1404, or voluntary coordination and cooperation, are not sufficient to achieve minimization of duplicative discovery or inconsistent pretrial rulings. Specifically, as the Panel has recognized, transfer pursuant to Section 1404 may not only be appropriate, but may be superior:

> Section 1404(a) transfer is for all purposes, including trial. For this reason, transfer under Section 1404(a)—where appropriate—can result in a more streamlined action, without the procedural necessity of remand to the transferor court that is required under Section 1407. This alone produces significant advantages. It allows for the possibility of consolidation of actions for trial, which potentially avoids the increased costs associated with multiple trials after the Panel remands actions to the various transferor courts once pretrial proceedings are concluded.

---

https://www.bleepingcomputer.com/news/security/powerschool-hacker-claims-they-stole-data-of-62-million-students/.

[6]     James Coker, *PowerSchool Reportedly Pays Ransom to Prevent Student Data Leak*, INFOSECURITY     MAGAZINE     (Jan.     9,     2025),     https://www.infosecurity-magazine.com/news/powerschool-pays-ransom-data-leak/.

*In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012); *see also In re Colgate Optic White Toothpaste Mktg. & Sales Practices Litig.*, 232 F. Supp. 3d 1346, 1347 (J.P.M.L. 2016); *In re Capacitors Antitrust Litig.*, 223 F. Supp. 3d 1340 (J.P.M.L. 2016).

Therefore, since a Section 1407 transfer is not permanent and is limited only to pretrial proceedings,[7] Section 1404 is preferable. *Gerber*, 899 F. Supp. 2d at 1380. "[W]here a reasonable prospect exists that resolution of Section 1404 motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization." *Id.* at 1380-81; *see also In re Air Crash Over the Hudson River Near New York, New York on August 8, 2009*, 716 F. Supp. 2d 1360, 1360 (J.P.M.L. 2010) ("While transfer under Section 1407 for pretrial purposes can streamline litigation, thereby benefitting the parties and the courts, transfer under Section 1404(a) for all purposes should be attempted, where appropriate.").

Moving Plaintiffs stop short of demonstrating that transfer pursuant to Section 1404, or other forms of voluntary coordination. That is not a sufficient showing. Transfer pursuant to Section 1404 is appropriate because it allows for the consolidation of actions for all purposes, including trial, thereby eliminating the need to remand to transferor courts after pretrial proceedings, which would otherwise be required under Section 1407. Moreover, a section 1404 transfer results in a more efficient litigation process that minimizes unnecessary procedural complexities and duplicate litigation efforts. "[C]entralization under Section 1407 'should be the last solution that parties seek after considered review of all other options, such as informal coordination or transfer under Section 1404.'" *In re: Dollar Tree Stores, Inc., Fair Lab. Standards*

---

[7]   Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings end." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 27 (1998).

4

*Act (FLSA) & Wage & Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 2011 WL 3648515, at *2 (J.P.M.L. Aug. 16, 2011)); *see also In re Epipen (Epinephrine Injection, USP) Emp. Ret. Income Sec. Act (ERISA) Litig.*, 276 F. Supp. 3d 1384, 1385 (J.P.M.L. 2017) (holding that alternatives such as transfer, pursuant to 28 U.S.C. §1404(a) or informal coordination of discovery, were preferable to centralization).

### B.  If Centralization is Deemed Appropriate, the Eastern District of California is the Most Suitable Venue for Transfer Under 28 U.S.C. §1407

To the extent the Panel deems centralization appropriate, Hisserich Plaintiffs believe that the Eastern District of California would be the most appropriate transferee court. As the Panel is aware, in determining whether to centralize actions pursuant to 28 U.S.C. §1407, the Panel evaluates multiple factors when determining the appropriate transferee district, including where discovery has occurred or will occur, the location of witnesses and relevant evidence, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges. See Manual for Complex Litigation (Fourth) §20.131 (2004) (citing Robert A. Cahn, A Look at the Judicial Panel on Multidistrict Litigation, 72 F.R.D. 211, 214-15 (1977)) and §22.33 (discussing centralization). In proposed MDLs centered on data security breaches, the Panel has often ruled that the single most important factor in deciding where to send the MDL is the presence of key documents and witnesses. For example, in *Samsung*, this Panel held that "Defendant has its headquarters in New Jersey, where common witnesses and other evidence likely will be found." *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023); *see also In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364

(J.P.M.L. 2020) ("Blackbaud has its headquarters in South Carolina. Thus, common witnesses and other evidence likely will be located in this district.")

A balancing test of these factors shows that the Eastern District of California is the most appropriate venue for centralization and transfer of the Actions. A substantial portion of the discovery in this matter will be conducted in the Eastern District of California, as the Defendants are headquartered there, and their relevant documents and witnesses are also located in that jurisdiction, resulting in significant time and cost savings for all parties. The vast majority of related cases (over 40), except for six, have already been filed in the Eastern District of California. Although class members reside across the country, this district offers a practical and accessible venue due to its proximity to four major international airports – Sacramento International Airport, Oakland International Airport, San Francisco International Airport, and San Jose International Airport – as well as a wide range of accommodations, facilitating ease of participation for out-of-state litigants. Specifically, the Sacramento International Airport served 13,634,838 passengers in 2024, with 180 daily nonstop flights expected by July 2025.[8] In contrast, the Kansas City International Airport served 12,126,500 total passengers in 2024 with service to 51 nonstop markets.[9]

Additionally, there are no multidistrict litigation proceedings currently pending in the Eastern District of California, demonstrating the court's capacity to effectively manage this complex litigation. In contrast, the Western District of Missouri is already overseeing multiple

---

[8] *Sacramento International Airport sets passenger record in 2024*, SACRAMENTO COUNTY (Jan. 28, 2025), https://sacramento.aero/scas/about/news-and-events/sacramento-international-airport-sets-passenger-record-in-2024#:~:text=Sacramento%20International%20Airport%20offers%20more,information%2C%20visit%20sacramento.aero.

[9] *Kansas City International Airport Celebrates its Busiest Year Ever with 12.1 million Passengers Served in 2024*, KANSAS CITY INT'L AIRPORT (Feb. 19, 2025), https://flykc.com/newsroom/news-releases/mci-airport-traffic-dec-2024.

MDLs, with half of its judges currently presiding over other multidistrict litigations, including the *Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Practices and Products Liability Litigation* (MDL No. 2936) (Judge Stephen R. Bought), *Ahern Rentals, Inc., Trade Secret Litigation* (MDL No. 2945) (Chief Judge Beth Phillips), *Folgers Coffee Marketing and Sales Practices Litigation* (MDL-2984) (Chief Judge Beth Phillips), *and T-Mobile 2022 Customer Data Security Breach Litigation* (MDL-3073) (Judge Brian C. Wimes). Given these factors, the Eastern District of California is well-suited to handle this matter efficiently and effectively.

Dated: February 20, 2025  **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Joseph P. Guglielmo*

Joseph P. Guglielmo
The Helmsley Building
230 Park Ave., 24th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com

***Attorney for Hisserich Plaintiffs***