BEFORE THE UNITED STATES JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC., AND POWERSCHOOL GROUP, LLC CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3149 |

**INTERESTED PARTY RESPONSE BY PLAINTIFFS NICOLE FLICK AND M.C. TO MOTION TO TRANSFER AND CONSOLIDATE RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

**I.      INTRODUCTION**

Plaintiffs Nicole Flick and M.C. ("Plaintiffs"), respectfully submit this response in partial opposition of the motion filed by Plaintiffs-Movants J.I., A.J., O.S., and M.S. ("Movants") seeking to consolidate and transfer what are now over at least 40 related data breach cases ("Related Actions") to the United States Western District of Missouri for coordinated pretrial proceedings under 28 U.S.C. § 1407 – <u>where the only connection with the district is the filing of 2 of the 43 filed actions</u>. Plaintiffs Flick and M.C. support consolidation and centralization of the Related Actions but oppose the Movants' choice of transferee forum.

The Eastern District of California is the most logical and appropriate venue for transfer, given that PowerSchool – the entity at the heart of this multidistrict litigation – maintains its principal place of business in the Eastern District of California, and it is where the key corporate witnesses are located, critical decision-making processes took place, and where the overwhelming majority of these actions were correctly filed. Besides convenience to the key witnesses, the corporate entity at the heart of this litigation, and most of the parties involved in the litigation, the district has the capacity and judicial resources necessary to manage a large MDL efficiently, as well as experience in overseeing complex litigation. Alternatively, Plaintiffs also support the Northern District of California, which is relatively close to the PowerSchool's residence and

location of key corporate witnesses, geographically convenient for the parties involved, and where the district is likewise well familiar with managing complex litigation, including data breach MDLs.

## II. BACKGROUND

PowerSchool is a cloud-based software solutions provider for K-12 schools and districts that collects and manages the data of over 60 million students and over 18,000 customers worldwide. On December 28, 2024, PowerSchool became aware that cybercriminals had hacked into its programs and exfiltrated significant amounts of data on students and teachers throughout the country. [1] ("Data Breach").

While PowerSchool has not officially stated the number of students impacted, numerous reports cite it as being in the tens of millions.[2] PowerSchool is only now beginning to notify individuals, many of whom have had to find out information on the breach from their school directly or online.[3]

As of the date of this filing, out of 43 Related Actions, the overwhelming majority of cases - 38 of them were filed in the Eastern District of California – where PowerSchool resides. The remaining 5 were filed in other districts - 2 in the Western District of Missouri, 1 in the Northern District of California, 1 in the Eastern District of New York, and 1 in the Northern District of Illinois. (Dkt. 1, 20, 28-30, 43, 47, 57, 61, 67, 72).

---

[1] Lawrence Abrams, *PowerSchool hack exposes student, teacher data from K-12 districts,* BLEEPINGCOMPUTER (Jan 7, 2025),
https://www.bleepingcomputer.com/news/security/powerschool-hack-exposes-student-teacher-data-from-k-12-districts/.
[2] Lawrence Abrams, *PowerSchool hacker claims they stole data of 62 million students,* BLEEPINGCOMPUTER (Jan 22, 2025),
https://www.bleepingcomputer.com/news/security/powerschool-hacker-claims-they-stole-data-of-62-million-students/
[3] Bill Toulas, *PowerSchool Starts Notifying Victims Of Massive Data Breach,* BLEEPINGCOMPUTER (Jan 28, 2025),
https://www.bleepingcomputer.com/news/security/powerschool-starts-notifying-victims-of-massive-data-breach/

### III. ARGUMENT

The Related Actions, and any tag-along actions that follow, are appropriate for consolidation and transfer pursuant to 28 U.S.C. § 1407(a) because they involve many common questions of fact, and transfer will benefit the parties and the entire court system. "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Man. for Complex Litig., § 20.131 (4th ed. 2004). Transferring and centralizing these matters for coordinated or consolidated pretrial proceedings would achieve each of those objectives.

#### A. The Related Actions involved Common Questions of Fact

When related actions involve alleged "common questions of fact," this Panel has held that "[c]entralization under Section 1407 is . . . necessary in order to prevent duplication of discovery and eliminate the possibility of conflicting pretrial rulings concerning the common factual questions." *In re Oil Spill by "Amoco Cadiz" Off Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979); *see also In re 23andMe, Inc.,* No. MDL No. 3098, 2024 U.S. Dist. LEXIS 66972, at *2 (J.P.M.L. Apr. 11, 2024) (centralizing thirty-nine actions in three districts, with eight more possible tag-along actions, related to singular data breach, holding "[c]entralization will avoid the possibility of inconsistent pretrial rulings, particularly with respect to class certification."); *In re Fortra File Transfer Software Data Sec. Breach Litig.,* No. MDL No. 3090, 2024 U.S. Dist. LEXIS 20080, at *2 (J.P.M.L. Feb. 5, 2024) (centralizing data breach actions which shared "common and complex factual questions" relating to how the breach occurred, and the defendant's response to the breach).

Here, each of the Related Actions arise from the same Data Breach, and that the breach resulted from PowerSchool failing to adequately maintain security on its servers and negligently storing the data of tens-of-millions of students and teachers. The Data Breach was a single incident and thus the allegations made in the class actions are largely similar. While some complaints name other parties in addition to PowerSchool, PowerSchool is a common Defendant in all cases. Thus,

the cases are related and relate to common facts and questions of law.

**B.     Consolidation or Coordination of Pre-Trial Proceedings Would Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Action**

Consolidation will serve the convenience of the parties and witnesses by placing related actions before a single judge to oversee. *See In re Moveit Customer Data Sec. Breach Litig.*, No. MDL No. 3083, 2023 U.S. Dist. LEXIS 178596, at *7 (J.P.M.L. Oct. 4, 2023) ("we are of the opinion that the parties can obtain significant efficiencies by placing all actions concerning the vulnerabilities in the [] software before a single judge"). Discovery in each of the actions is likely to substantially overlap and will concern similar issues, including, among others, how PowerSchool's systems were breached, what security measures PowerSchool had in place to protect against a breach, and what information was compromised in the Data Breach.

By consolidating these actions before a single judge, the process effectively sidesteps inefficiencies in conducting discovery and inconsistent pre-trial rulings, while promoting the conservation of legal and judicial resources. *In re Moveit* at * 5 ("substantial opportunities to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; prevent inconsistent rulings on common *Daubert* challenges and summary judgment motions; and conserve the resources of the parties, their counsel, and the judiciary"). This also includes reducing the cost of document review platforms and depositions for third-party witnesses as well as party witnesses. Consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving parties' and judicial resources.

Additionally, the procedural posture of each of the Related Actions supports consolidation. Here, each of the Related Actions is still in the very early stages of litigation, as all have been filed within a short period of time after notice of the Data Breach was made, and there has not been substantive motion practice or discovery in the cases. *See In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022) ("[T]he common early procedural posture among the actions will facilitate their efficient coordination.").

the cases are related and relate to common facts and questions of law.

**B.     Consolidation or Coordination of Pre-Trial Proceedings Would Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Action**

Consolidation will serve the convenience of the parties and witnesses by placing related actions before a single judge to oversee. *See In re Moveit Customer Data Sec. Breach Litig.*, No. MDL No. 3083, 2023 U.S. Dist. LEXIS 178596, at *7 (J.P.M.L. Oct. 4, 2023) ("we are of the opinion that the parties can obtain significant efficiencies by placing all actions concerning the vulnerabilities in the [] software before a single judge"). Discovery in each of the actions is likely to substantially overlap and will concern similar issues, including, among others, how PowerSchool's systems were breached, what security measures PowerSchool had in place to protect against a breach, and what information was compromised in the Data Breach.

By consolidating these actions before a single judge, the process effectively sidesteps inefficiencies in conducting discovery and inconsistent pre-trial rulings, while promoting the conservation of legal and judicial resources. *In re Moveit* at * 5 ("substantial opportunities to streamline pretrial proceedings; reduce duplicative discovery and conflicting pretrial obligations; prevent inconsistent rulings on common *Daubert* challenges and summary judgment motions; and conserve the resources of the parties, their counsel, and the judiciary"). This also includes reducing the cost of document review platforms and depositions for third-party witnesses as well as party witnesses. Consolidation of the cases will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency and preserving parties' and judicial resources.

Additionally, the procedural posture of each of the Related Actions supports consolidation. Here, each of the Related Actions is still in the very early stages of litigation, as all have been filed within a short period of time after notice of the Data Breach was made, and there has not been substantive motion practice or discovery in the cases. *See In re Neo Wireless, LLC, Pat. Litig.*, 610 F. Supp. 3d 1383, 1385 (J.P.M.L. 2022) ("[T]he common early procedural posture among the actions will facilitate their efficient coordination.").

Finally, consolidation also decreases the likelihood of inconsistent ruling on pretrial issues because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings); *see also In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968) (stating the purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions").

### C. The Eastern District of California Would be the Most Appropriate Venue for Transfer

"The Panel uses no single factor to select the transferee district, but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Manual for Complex Litigation (Fourth) § 20.131 (2004) (footnote omitted); *see also In re Preferential Drug Prod. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977).

Here, each of these factors warrants transfer to the Eastern District of California, as discussed below.

### a. PowerSchool's Headquarters in Folsom Warrant Transfer of Cases to the Eastern District of California

One of the most important considerations that the JPML panel reviews is where the defendant resides, and the key witnesses are located. *See e.g. In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Practices Litig.*, 178 F. Supp. 3d 1377, 1379 (J.P.M.L. 2016) (transferring cases to the district where "Defendant . . . has its headquarters . . . and represents that key witnesses reside . . . ."); *see also In re Evolve Bank & Tr. Customer Data Sec. Breach Litig.,* 2024 U.S. Dist. LEXIS 182265, at *2 (J.P.M.L. Oct. 4, 2024) (transferring cases to W.D. Tenn. Because "its headquarters are located in this district" and its main office and another office were "nearest" from this forum); *In re Angiodynamics, Inc.*, 2024 U.S. Dist. LEXIS 182258, at *4 (J.P.M.L. Oct. 3, 2024)

5

(transferring cases to S.D. Cal., where a main defendant was headquartered, and other defendants supported centralization).

Here, it is undisputed that PowerSchool is headquartered in the Eastern District of California. Most (if not all) of PowerSchool's key employees and decision makers are in the Eastern District of California as well, which would make in-person depositions and testimony easier. For example, the Chief Executive Officer of PowerSchool, Hardeep Gulati, is listed as being based out of the Sacramento, California area.[4] Devendra Singh, PowerSchool's Chief Technology Officer is based in Saratoga, California.[5] Darron Flagg, PowerSchool's Chief Compliance Officer and Chief Privacy Officer, is also based out of Sacramento, California.[6] While remote depositions are a possibility, courts have recognized the benefits of in-person depositions over remote depositions. *G.K. v. D.M.*, No. 21-2242, 2024 U.S. Dist. LEXIS 75271, at *8 (E.D. La. Apr. 25, 2024) (holding that "[c]ourts historically recognize that live testimony is far superior to video or telephone testimony"). Thus, the Eastern District of California will be the key location for any of these witnesses and the key defendant – be it for depositions or trials. Therefore, the relevant databases, documents, witnesses, and other evidence are more likely to be found in the Eastern District of California, minimizing the cost and inconvenience to the parties and weigh heavily in favor of transferring the cases to California. *See In re Samsung Customer Data Security Breach Litigation,* MDL 3055, 655 F. Supp. 3d 1368 (Feb. 1, 2023) (transferring the data breach cases to New Jersey, where Defendant was headquartered, where common witnesses and other evidence was likely to be found, while rejecting transfer to Nevada where connection with the district was non-existent despite less overburden docket of the Nevada District); *In re Capital One Customer Data Sec. Breach Litig.,* 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (transferring

---

[4] Hardeep Gulati, LINKEDIN, https://www.linkedin.com/in/hardeepgulati (last accessed February 20, 2025).
[5] Devendra Singh, LINKEDIN, https://www.linkedin.com/in/devendra-singh-ab06b48 (last accessed February 20, 2025).
[6] Darron Flagg, LINKEDIN, https://www.linkedin.com/in/darronflagg (last accessed February 20, 2025).

actions to the district where the relevant witnesses and evidence were located, as well as the key defendant).

### b. Eastern District of California is the site of the occurrence of the common facts

Given PowerSchool's headquarters and its principal place of business in Folsom, California, the actions or inactions resulting in the Data Breach took place there, and it is also highly likely that is where the data was also stored, and where the data breach had occurred.[7] Because the Eastern District of California can be considered the site of the occurrence of common facts from where any relevant contracts were entered, where servers are located, and from where the hackers accessed the information, the transfer is warranted to district.

### c. Nearly all cases – 38 out of 43 – are pending in the Eastern District of California

The overwhelming majority of related cases filed regarding this Data Breach have been filed in the Eastern District of California. Of the cases filed so far, only a few have been filed outside of the Eastern District of California. Thus, this factor weighs strongly in favor of the Eastern District of California. See *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 2024 U.S. Dist. LEXIS 20080 (transferring to the district where the largest number of related actions were pending, to best serve the witnesses and the parties to the actions). *Also See In re Moveit*, at 1407 (transferring cases to district because "[m]ore cases are pending in [the] district than in any other district" and one of the defendants was located there).

### d. Cost and convenience to the parties

The cost and inconvenience of the parties will also be minimized by transfer to the Eastern District of California, where the majority of the parties had already consented to litigate in – by filing actions in California. The Eastern District of California also has the infrastructure to easily accommodate out-of-town lawyers, parties, and witnesses. As the capital of California,

---

[7] PowerSchool, LinkedIn, https://www.linkedin.com/company/powerschool-group-llc/about/ (Last accessed February 3, 2025).

Sacramento has an international airport[8] and a multitude of hotels and convenient accommodations.[9] This will ensure convenience for any parties travelling to the district for court hearings or other litigation activities.

### e. Where discovery has occurred and where cases have progressed the furthest

Discovery has not occurred in any case, as they are all in the early stages of litigation. Additionally, no cases have had substantive motions filed and are stayed pending resolution before this panel, so both of these factors are neutral.

### f. The experience, skill, and caseloads of available judges

The Eastern District of California does not have any current MDLs pending and thus would be better able to accommodate an MDL, contrary to the Movants' suggestion. The judges in the Eastern District of California are all well equipped to manage a complex action in an efficient and expedient manner. To the extent any of these highly qualified judges believe that their docket is already heavy – they can decline, allowing the cases to be reassigned to another judge in the district. The first filed action in the Eastern District of California has been already re-assigned to Judge Dena M. Coggins, a newer judge to the district with a lighter case load, and who is highly capable of handling the MDL, given her prior experience of serving as a judge of the Sacramento County Superior Court – where she handled much higher case load of cases. Furthermore, the Eastern District of California now has several other new judges, and thus, the district's per-judge ratio of cases and docket expediency is anticipated to improve.[10]

The W.D. Mo., in turn, is already overburdened by MDLs, with 4 pending, and thus, the district already has a heavy load of MDLs. Movants and Plaintiff, Alyssa Krutsinger (Dkt. 65) also argue that the Eastern District of California has a higher volume of cases per judge and a lengthier

---

[8] Sacramento International Airport, https://sacramento.aero/smf (Last accessed February 20, 2025).
[9] Visit Sacramento, https://www.visitsacramento.com/hotels/ (Last accessed February 20, 2025).
[10] In just the past 2 years, 3 judges have been appointed to the district: Hon. Daniel Calabretta on February 21, 2023, Hon. Kirk Sherriff on February 7, 2024, and Hon. Dena Coggins on September 18, 2024).

8

disposition time than the W.D. of Mo. – but the same argument was rejected by the panel in *Samsung.* In *Samsung*, defendant, like the movants here, asked to transfer cases to Nevada, arguing a more expedited timeline and lower volume of cases per a judge, but the panel rejected doing so because the district had no connection with the action. *In re Samsung Customer Data Security Breach Litigation,* MDL 3055, 655 F. Supp. 3d 1368.

Therefore, this factor also weighs in favor of transfer to the Eastern District of California.

### g. The Western District of Missouri does not have a sufficient connection with the litigation to warrant transfer

Movants have not provided any specific connection to any of the Defendants, the proposed class, the Data Breach, or even a substantial amount of the Plaintiffs. Their entire argument rests on a misconception that the district's perceived convenience (i.e. having enough airports and hotels) as well some familiarity with data breach MDLs – which could be said for many districts including the district courts in California – should be sufficient to transfer cases to the district. But the law does not support this notion, and a meaningful connection with the case is a must. Here – no such meaningful connection with the Western District of Missouri exists – it is that simple.

For all these reasons, the Panel should consolidate these matters and transfer the Related Actions to the Eastern District of California.

### D. In the Alternative, Consolidation in the Northern District of California, would be Proper

If the panel decides against transfer to the Eastern District of California, Plaintiffs believe that the Northern District of California would be an excellent alternative location for centralizing the cases. The main courthouse in the Northern District of California (San Francisco) is still located fairly close to Defendant PowerSchool's offices in Folsom, California – between 107-149 miles (depending on route taken), and roughly 2-hour drive away. When witnesses or decision-makers would be required to appear in court, the location would still be highly convenient. The main courthouse for the Northern District is also not far from the main courthouse for the Eastern District of California; it is only a roughly 90-minute drive from the Sacramento, California courthouse.

The District is also well familiar with the data breaches and handling of the MDLs, and offers litigants its preferred model protective order, ESI protocols, and other documents to ensure efficiency of litigation.

Additionally, there is already a pending Related Case, *Wright v. PowerSchool Holdings*, filed in the Northern District of California which should make transfer of the matter easier to that district if the Panel chooses to do so. *Wright v. PowerSchool Holdings, Inc.*, et al., Case No. 3:25-cv-01543 (N.D. Cal.) (Dkt. 67).

Thus, in the alternative to the Eastern District of California, the Northern District of California would also provide all parties with a venue that would be highly convenient, conserve judicial resources, and allow the parties to move this case to adjudication quickly and inexpensively.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs Nicole Flick and M.C. respectfully request that the Panel consolidate all Related Actions but transfer them to the Eastern District of California, or in the alternative, to the Northern District of California.

Dated: February 20, 2025                    Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Yana Hart, Esq.
Ryan J. Clarkson, Esq.
Bryan P. Thompson, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
*yhart@clarksonlawfirm.com*
*rclarkson@clarksonlawfirm.com*
*bthompson@clarksonlawfirm.com*

*Counsel for Plaintiffs, Nicole Flick and M.C.*
(Case No. 2:25-cv-00232, E.D. Cal.)